IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANDA HOENIG, ) | |
| ) | Case No. 13 C 866 |
| Plaintiff, ) | |
| ) | Judge Ruben Castillo |
| v. ) | |
| ) | Magistrate Judge Michael T. Mason |
| KARL KNAUZ MOTORS, INC., ) | |
| ) | Jury Trial Demanded |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION**

Plaintiff, Shanda Hoenig, by and through her attorneys, Pedersen & Weinstein LLP, respectfully submits this Response In Opposition To Defendant's Motion To Dismiss Or, In The Alternative, To Stay Pending Arbitration.

**I.   Introduction**

Plaintiff is a former employee of Karl Knauz Motors, Inc. ("Defendant" or "Knauz") and brings this action to challenge its discrimination against her in the payment of wages based on her gender and retaliation against her for opposing the unlawful conduct.[1]  Defendant has filed a motion to dismiss Plaintiff's claims, or in the alternative to stay them pending arbitration. Defendant's motion should be denied because there is no agreement to arbitrate Plaintiff's claims and even if there were, Defendant has waived the right to enforce it.

**II.   Facts**

Plaintiff first worked for Defendant from August 1999 until March 2004, when she

---

[1] The EEOC entered a finding in Plaintiff's favor on all of her claims.

voluntarily resigned. (Complaint ¶¶ 4, 7).[2] In 2003, during her first term of employment, Plaintiff was required to sign an arbitration agreement in order to keep working. (Declaration of Shanda Hoenig, attached as <u>Exhibit A</u> ¶ 2). This is the agreement upon which Defendant bases its motion.

In March 2004, Plaintiff resigned from Knauz and had no intention of returning. She received all her accrued but unused vacation pay and her employment was fully terminated. (Declaration of Shanda Hoenig, ¶ 3). In August 2004, Knauz contacted Plaintiff and asked her to work for it again, but as a cashier, a different position than she held when she resigned. (Complaint ¶ 7; Declaration of Shanda Hoenig, ¶ 4.) Plaintiff agreed and worked for Knauz again from August 2004 until July 2011 when she was fired. (Declaration of Shanda Hoenig, ¶ 4). Plaintiff's second term of employment was treated as a separate and distinct period of employment by Knauz. Even her personnel file reflects her start date as "8/27/04" for her second term of employment. (Declaration of Shanda Hoenig, ¶ 5). At no time during her second term of employment was Plaintiff asked to sign another arbitration agreement. Plaintiff understood that the earlier arbitration agreement had only applied to her first term of employment, not to her later employment in a different position. (Declaration of Shanda Hoenig, ¶ 6).

In August 2010, after discovering that Defendant paid her male predecessor more than it paid her for doing the same job, Plaintiff filed a charge of discrimination with the EEOC. (Complaint ¶¶ 18, 25). Plaintiff filed another charge of discrimination and retaliation with the EEOC in May 2011. (Complaint ¶ 36). Defendant fired Plaintiff on July 22, 2011 and Plaintiff

---

[2] Although Plaintiff stated in her complaint that she resigned from Defendant in 2004 and later returned (Complaint ¶ 7), she did not elaborate on these facts as she did not know that they were material because she did not know Defendant would try to compel her to arbitration.

2

filed a third charge with the EEOC. (Complaint ¶¶ 41, 46-47). After conducting an investigation, the EEOC issued a determination stating that the evidence it obtained established reasonable cause that Defendant had discriminated and retaliated against Plaintiff. (Complaint ¶ 47). The EEOC's efforts to conciliate Plaintiff's claims were unsuccessful and on or about November 6, 2012, the EEOC issued Plaintiff her Notice of Right to Sue. (Complaint ¶ 48).

     Plaintiff filed her Complaint on February 4, 2013. (Dkt. No. 1). On February 15, 2013, Defendant issued Plaintiff a Rule 68 Offer of Judgment to Plaintiff. (See Offer of Judgment, attached as Exhibit B). Defendant filed its Answer And Affirmative Defenses on April 5, 2013. (Dkt. No. 9). On April 8, 2013, the parties filed a Joint Status Report. (Dkt. No. 11). In the Joint Status Report, the parties agreed to exchange Rule 26(a)(1) initial disclosures by April 30, 2013, to complete all non-expert discovery by October 30, 2013, and to submit dispositive motions by December 6, 2013. On April 11, 2013, the parties appeared before the Court for an initial status hearing. Following the status hearing, the Court entered an Order directing the parties to proceed with all discovery, ordered that all discovery be completed on or before September 30, 2013, and scheduled a settlement conference for June 13, 2013. (Dkt. No. 12). On April 11, 2013, Defendant issued a notice of deposition for Plaintiff's deposition on June 4, 2013 (later changed to June 5) and on April 12, 2013, served its first set of interrogatories and requests for documents on Plaintiff. Plaintiff served her first set of interrogatories and requests for documents on April 11, 2013. On April 16, 2013, defense counsel initiated the negotiation of a protective order with Plaintiff's counsel and counsel for the parties exchanged drafts and comments on the protective order on April 18 and April 23, 2013. On April 30, 2013, Plaintiff served her Rule 26(a)(1) initial disclosures on Defendant, although Defendant did not serve its disclosures as expected. Instead, after receiving Plaintiff's disclosures, Defendant requested a

3

brief extension of time to submit its initial disclosures.

On May 3, 2013, Jane McFetridge, one of Defendant's attorneys, sent a letter to Plaintiff's counsel referencing an agreement to arbitrate that Plaintiff signed in 2003 and "demand[ed] that Ms. Hoenig dismiss the above-referenced litigation and submit her claims to arbitration." (See May 3, 2013 letter from Jane McFetridge, attached as Exhibit C). This was the first time Defendant raised the issue of arbitration in this litigation, despite being aware of the agreement for years. Defendant's counsel initially claimed that they only learned of the arbitration agreement on Friday, May 3, 2013 (see May 7, 2013 email from Sean Herring attached as Exhibit D, p.1), which is not true. Defendant's attorneys – the same ones representing it in this case – knew of the arbitration agreement at least by June 2, 2011 when they submitted it to the EEOC. (See June 2, 2011 letter to EEOC from Sean Herring and bates stamped arbitration agreement, attached as Exhibit E).

### III. Legal Standard

Defendant brings its motion pursuant to the Federal Arbitration Act ("FAA") which provides that a written agreement to arbitrate in a contract involving commercial transactions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further provides that a court in which a suit is pending, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

It is well-established that "arbitration is a matter of contract and a party cannot be

4

required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communs. Workers of Am.,* 475 U.S. 643, 648-649 (U.S. 1986)(citations omitted). "If there is no contract there is to be no forced arbitration." *Gibson v. Neighborhood Health Clinics,* 121 F.3d 1126, 1130 (7th Cir. 1997) "In deciding whether the parties agreed to arbitrate, courts apply state contract law governing the formation of contracts." *Continental Casualty Co. v. LaSalle Re Ltd.,* 511 F. Supp. 2d 943, 946 (N.D. Ill. 2007). Because the events at issue here arose in Illinois, Illinois state law on contracts applies. *See Gibson*, 121 F.3d at 1130 (applying Indiana law because Indiana was situs of all relevant events). "Under Illinois law, the Court must interpret the language of the contract in accordance with its plain meaning and must construe the contract as a whole." *Continental Casualty Co.,* 511 F. Supp. 2d at 947.

While there is a general presumption in the law favoring arbitration, the presumption is not absolute. "[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Pickering v. Urbantus, LLC,* 827 F. Supp. 2d 1010, 1015 (S.D. Iowa 2011)(citing *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998); *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995)). Further, "the federal policy embodied in the Arbitration Act is a policy favoring enforcement of contracts, not a preference for arbitration over litigation." *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc*., 969 F.2d 585, 590 (7th Cir. 1992).

## IV. Defendant's Motion Should Be Denied

Applying these principles to this case, Defendant's motion should be denied for two key reasons: 1) there is no agreement between the parties to arbitrate Plaintiff's claims and 2) even if there were an agreement to arbitrate, Defendant has waived it.

5

### A. There Is No Agreement To Arbitrate Plaintiff's Claims

The first key reason why Defendant's motion should be denied is that there simply is no agreement between the parties to arbitrate Plaintiff's claims. Defendant focuses extensively on the terms of the arbitration agreement that Plaintiff signed in 2003, during her first tenure of employment with Defendant, but this agreement, even if otherwise valid, terminated when Plaintiff terminated her employment relationship with Defendant in 2004. Significantly, when Plaintiff was later re-hired by Defendant, in a different position, the parties did not enter into a new arbitration agreement. Defendant did not even consider her earlier start date as her date of hire; instead it considered August 27, 2004 to be her date of hire, further evincing two separate employment relationships. The two separate hires at issue here implicate two separate contractual undertakings, the first of which was terminated when Plaintiff resigned in 2004.

Defendant attempts to gloss over the fact that the 2003 arbitration agreement expired in 2004, but this fact alone is fatal to Defendant's motion under the straightforward contract analysis described above. More specifically, there was no offer or acceptance of an agreement to arbitrate during Plaintiff's second term of employment with Defendant. As the Seventh Circuit explained in another case involving an expired agreement to arbitrate, "a contract that by its own terms expired in 1999 cannot possibly be the basis of the parties' current dealership arrangement, and thus the termination of the current relationship cannot, at least absent additional evidence, be said to relate in any way to the expired contract." *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc*., 486 F.3d 989, 994 (7th Cir. 2007)(citing *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc*., 307 F.3d 601, 604 (7th Cir. 2002)(*Nissan I*)). Accordingly, the Court upheld the lower court's decision denying a motion to compel arbitration where there simply was no written arbitration agreement covering the relevant time period. *Id.* at 995. To hold

6

otherwise "would make the contractual obligation to arbitrate limitless." *Nissan I,* 307 F.3d at 604. *See also Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 871, 873 (7th Cir. 1985)(affirming denial of motion to compel arbitration when plaintiff did not clearly intend to be bound by arbitration in a subsequent agreement and explaining that the earlier arbitration agreement "may have been universal, but it was not eternal."); *O'Hare Accommodations, Inc. v. Aaron Corporation*, 2010 U.S. Dist. LEXIS 51237, *11 (N.D. Ill. May 25, 2010)(Aspen, J.)(attached hereto as Exhibit F)(denying motion to compel arbitration where the dispute arose entirely during the course of the parties' relationship *subsequent* to an arbitration agreement's expiration); *Gonzalez v. Hurley Int'l, Inc.,* 763 F. Supp.2d 288, 293 (D.P.R. 2011)(same); *Cornell v. Harmony Homes, Inc.*, 2007 U.S. Dist. LEXIS 564 (D. Colo. Jan. 4, 2007)(Nottingham, J.)(attached hereto as Exhibit G)(denying motion to compel arbitration where the agreement to arbitrate was not in place at time of plaintiff's termination).[3]

This case is also very similar to *Frank v. 84 Components Co.,* 2002 U.S. Dist. LEXIS 11218 (S.D. Ind. June 18, 2002)(Hamilton, J.)(attached hereto as Exhibit H) in which the plaintiff signed an arbitration agreement with her employer in 1999, was terminated in May 2000, and then subsequently rehired in August 2000 but did not sign a new arbitration agreement. The court denied defendant's motion to stay pending arbitration finding that the 1999 agreement to arbitrate could not be applied to claims arising from the plaintiff's second

---

[3] Defendant's claim on page 9 of its brief that there was consideration for the arbitration agreement by way of Plaintiff's continued employment with Knauz misses the mark. First, there was no arbitration agreement in place during Plaintiff's second term of employment as discussed herein so her continued employment during that time has no bearing on the issue. Second, even if there was an arbitration agreement during that time, continued employment amounts to consideration only when an employee is explicitly told that his or her continued employment is given in exchange for an agreement to arbitrate and there is no such notice here. *See, e.g. Gibson,* 121 F.3d at 1132 (explaining that the mere fact of continued employment does not constitute consideration for an arbitration agreement where the employer never communicated that fact to the employee).

firing when there was no separate arbitration agreement from plaintiff's second period of employment. Likewise, while the parties here began a second employment relationship following Plaintiff's voluntary departure in 2004, there was no agreement to arbitrate any claims that accrued during that second term. *See also O'Hare Accommodations,* 2010 U.S. Dist. LEXIS 51237 at *13 (holding that while the parties wished to continue an ongoing relationship after their initial agreement expired, there was no written indication that they had elected arbitration to govern any disputes that arose during that term).

Without any factual support, Defendant argues that the arbitration agreement "speaks for itself and shows that the parties' intent was for the agreement to arbitrate to survive after Plaintiff's separation." (Defendant's Memorandum, p. 10). This is wholly unfounded. The 2003 agreement states it applies to claims "arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment with or other association with the Dealership."[4] The agreement further states in the third to last paragraph that it is "the entire agreement between the Dealership and the Employee regarding dispute resolution, *the length of my employment, and the reasons for termination of employment…*" (emphasis added). This language evinces the parties' intent that the agreement would cover the term of Plaintiff's employment and then cease to be in effect as there would be no further need for it.

Significantly, nothing in the agreement provides that it applies to any future claims, or that it applies to claims in perpetuity, or even that it applied after Plaintiff's employment terminated. Such omissions preclude any finding that it applies to Plaintiff's second term of employment. Indeed, the only cases that Plaintiff has located where an arbitration agreement

---

[4] The copy of the agreement as submitted by Defendant is of poor quality but Plaintiff believes this quote to be accurate.

8

was ruled to apply to a subsequent term of employment are those where the arbitration agreement explicitly reflected the parties' intent that it would. *See, e.g. Anderson v. Waffle House, Inc.*, 2013 U.S. Dist. LEXIS 11630, * 20-21 (E.D. La. Jan. 29, 2013)(attached hereto as Exhibit I)(ordering arbitration where agreement specifically stated that it applied to "all future claims," would "survive termination of my employment," and contained the exclusive means for revoking the agreement because these terms unambiguously reflected the parties' intent that the arbitration agreement would survive any break in plaintiff's employment); *Cannonier v. Turner Int'l, LLC,* 2010 U.S. Dist. LEXIS 17173 *7-8 (D.V.I. Feb. 25, 2010)(attached hereto as Exhibit J)(ordering arbitration where agreement specifically stated that "Employee and Employer specifically agree that sections 17 through 21 of this Agreement shall remain in full force and effect *notwithstanding the termination of this Agreement or Employee's employment* for any reason whatsoever)(Emphasis in original).

The agreement here contains no such language, precluding a finding that the parties intended the agreement to apply to a second term of employment, and no such language can now be imposed. As this Court has held, "[a] presumption exists against provisions that easily could have been included in the contract but were not." *Continental Casualty Co.,* 511 F. Supp. 2d at 947.

For all these reasons, and applying basic contract principles, Plaintiff simply did not agree to arbitrate any claims that arose during her second term of employment and for this reason Defendant's motion should be denied.

### B. Defendant Has Waived The Right To Compel Arbitration

Even if the 2003 arbitration agreement somehow applied to Plaintiff's second term of employment with Defendant, Defendant has waived the right to enforce it.

"[T]he federal policy favoring arbitration is not an absolute preference for arbitration over litigation anytime an arbitration agreement exists. Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is waiver of the right to arbitrate." *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc*., 969 F.2d 585, 587 (7th Cir. 1992). As Judge Posner has also explained, "[T]he court is not to place its thumb on the scales; the federal policy favoring arbitration is, at least so far as concerns the interpretation of an arbitration clause, merely a policy of treating such clauses no less hospitably than other contractual provisions." *Cabinetree of Wisconsin v. Kraftmaid Cabinetry,* 50 F.3d 388, 390 (7th Cir. 1995).

"No rigid rule exists as to what constitutes a waiver of the right to arbitrate. Instead, the issue depends on the circumstances of each particular case." *St. Mary's* at 587-88. "The essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate." *St. Mary's* at 588. "Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision – 'did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'" *Ernst & Young LLP v. Baker O'Neal Holdings, Inc*., 304 F.3d 753, 758 (7th Cir. 2002)(citations omitted)(emphasis removed).

Here, Defendant has waived any right to compel arbitration because it has acted inconsistently with an intent to arbitrate. Despite knowing about the arbitration agreement, Defendant: (a) filed an answer and affirmative defenses to Plaintiff's Complaint; (b) issued a Rule 68 offer of judgment to Plaintiff; (c) participated in the preparation and filing of a joint status report; (d) noticed Plaintiff's deposition; (e) served interrogatories and requests for

10

documents; (f) has been served with Plaintiff's interrogatories and requests for documents; (g) initiated the negotiation of a protective order; and (h) exchanged initial disclosures with Plaintiff (although Defendant did not serve its disclosures until after Plaintiff filed a motion to compel them). All these actions and steps in litigation are inconsistent with an intent to arbitrate Plaintiff's claims. *See, e.g. Corbett v. DRH Cambridge Homes, Inc.*, 2005 U.S Dist. LEXIS 14989 *7 (N.D. Ill. July 26, 2005)(Leinenweber, J.)(attached hereto as Exhibit K)(finding waiver of contractual right to arbitration where defendants had appeared before the court, attended status hearings, sought discovery from plaintiff, and obtained a favorable ruling from the court on a motion); *Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association,* 2011 U.S. Dist. LEXIS 5731 *13 (N.D. Ill. Jan. 20, 2011)(Kennelly, J)(attached as Exhibit L)(finding waiver based on defendant's 8-month delay in raising arbitration issue and its conduct in litigation that was inconsistent with an intent to arbitrate).

      Further, Defendant has not acted diligently in seeking arbitration as there is no question that Defendant and its counsel knew of the arbitration agreement for at least two years. Defense counsel initially denied this fact, telling Plaintiff's counsel that they only first learned of the arbitration agreement on May 3, 2013. When Plaintiff's counsel responded that the claim was not true, rather than acknowledging the error, Defense counsel instead lodged personal attacks against Plaintiff's counsel and then – conceding that they did in fact know of the agreement earlier – argued that they "can hardly be expected to remember a two page document" produced to the EEOC "two years ago." (Exhibit M, p. 1).

      Putting to the side Defense counsel's indignation at being challenged on the demonstrably false claim that they did not know about the arbitration agreement until May 3, 2013, the present attempt at an exculpatory "mea culpa" should be rejected for two key reasons.

First, lawyers must be held accountable for representing their clients throughout the course of litigation and failing to review the file for two years does not excuse any alleged oversight. *See Corbett*, 2005 U.S Dist. LEXIS 14989 at *8-9 (finding waiver of contractual right to arbitrate where defendants should have been aware of the arbitration agreement from the beginning of the litigation and noting that "[n]othing prevented Defendants from examining their own employee handbook, documents, or personnel files.). Further, it is significant that the same lawyers who submitted the arbitration agreement to the EEOC are also representing Defendant in this litigation. In other words, this is not a situation where knowledge need be imputed to Defendant or its lawyers; constructive knowledge is not necessary because they had **actual** knowledge of the arbitration agreement.

Given that there is no question that Defendant and its counsel knew about the agreement for two years, they plainly did not act diligently in raising it before now and engaging in all the proceedings and discovery measures described above. This delay is a waste of Plaintiff's resources, as well as the court system's, and is another factor that weighs in favor of finding waiver. *See Cabinetree,* 50 F.3d at 391 (noting that "[s]election of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution.").

Second, Defendant's claim of "forgetting" about the arbitration agreement for two years is not credible. On April 5, 2013, Defendant filed a 28-page Answer and Affirmative Defenses to Plaintiff's complaint ("Answer"). The Answer is replete with detailed averments about Plaintiff's employment, including dates of events, disciplinary actions taken against Plaintiff and the reasons therefore, Plaintiff's job duties, Plaintiff's specific rates of pay, and Plaintiff's FMLA leave (see, e.g. Answer ¶¶ 4, 6, 7, 8, 10, 13, 14, 16, 29, 30, 31, 38, 39). Defendant and its

12

counsel surely reviewed their own documents, particularly Plaintiff's personnel file which contains the arbitration agreement, to obtain this detailed information about Plaintiff's employment and before submitting the Answer to the Court. Plaintiff respectfully submits that this conduct – of initially telling Plaintiff's counsel that they had only first discovered the arbitration agreement in May 2013 and then continuing to deny having reviewed the file containing the arbitration agreement in preparing and submitting a 28-page Answer with highly detailed facts about Plaintiff's employment – is another factor that weighs in favor of finding waiver because it reflects that Defendant was aware of the arbitration agreement for two years but inexcusably failed to raise it until now.

Finally, although prejudice to Plaintiff is not a requirement to finding waiver by Defendant (*St. Mary's* at 590), Plaintiff has in fact been prejudiced by Defendant's belated attempt to force Plaintiff to arbitration. Defendant served interrogatories and document requests on April 12, 2013 and noticed Plaintiff's deposition for June 5. In response, Plaintiff and her counsel spent a significant amount of time gathering responsive documents (of which there are approximately 8,000 to 10,000) and information in response to Defendant's requests. Plaintiff also took time off work to gather documents and meet with her counsel to review them. In addition, and as noted by the Seventh Circuit as a relevant factor, Defendant's delay also caused Plaintiff "the expense of litigating in court" and time spent on "wasted litigation." *St. Mary's* at 591. Indeed, this case was pending for three months before Defendant first raised the issue of arbitration. While that amount of time may seem modest, to Plaintiff – who was fired almost two years ago – each passing day brings increased risk of losing evidence and available witnesses. To require her to start over again in a completely new forum will inevitably create

even more delay, further hindering her ability to prosecute her claims and have them adjudicated properly.

In sum, the circumstances of this case show that Defendant has waived any contractual right to arbitrate Plaintiff's claims and there is no justifiable excuse for Defendant's delayed invocation of the agreement.

## V.     Conclusion

Because there is no agreement to arbitrate the claims in this case, and because even if there were such an agreement Defendant has waived the right to enforce it, Plaintiff respectfully requests that the Court deny Defendant's Motion To Dismiss Or, In The Alternative, To Stay Pending Arbitration.

                                  Respectfully submitted,

                                  By:
                                        */s/Erika Pedersen*

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
55 E. Jackson Blvd.
Suite 510
Chicago, IL  60604
(312) 322-0710
(312) 322-0717 (facsimile)

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 10, 2013, a copy of the foregoing *Plaintiff's Response In Opposition To Defendant's Motion To Dismiss Or, In The Alternative, To Stay Pending Arbitration* was filed electronically. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jane M. McFetridge
Sean C. Herring
Jackson Lewis LLP
150 North Michigan Avenue
Suite 2500
Chicago, IL 60601


                                              */s/Erika Pedersen*
                                              Erika Pedersen




Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
55 E. Jackson Blvd., Suite 510
Chicago, IL 60604
(312) 322-0710
(312) 322-0717 (facsimile)