**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Shanda Hoenig, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 0866 |
| v. | ) | |
| | ) | **Chief Judge Ruben Castillo** |
| Karl Knauz Motors, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Shanda Hoenig ("Hoenig") brings this action against her former employer, Karl Knauz

Motors, Incorporated ("Knauz") alleging violations of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"); the Equal Pay Act of

1963, 29 U.S.C. §§ 206, 207; the Illinois Equal Pay Act, 820 Ill. Comp. Stat. 112/1 *et seq.*; and

the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, as well as unlawful

retaliation in violation of each statute. Presently before the Court are Knauz's motion for leave

to amend its answer and affirmative defenses pursuant to Federal Rule of Civil Procedure 15 and

Knauz's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) or,

in the alternative, to stay these proceedings pending arbitration pursuant to the Federal

Arbitration Act, 9 U.S.C. §§ 3, 4. For the reasons stated below, the Court grants Knauz's motion

for leave to amend and its motion to stay these proceedings pending arbitration.

### RELEVANT FACTS

Hoenig is a former employee of Knauz, a car dealership located in Lake Bluff, Illinois.

(R. 1, Compl. ¶¶ 4-5.) Hoenig began working for Knauz in August 1999, and she left Knauz

voluntarily in March 2004 to care for her children (the "First Employment Period"). (*Id.* ¶¶ 4, 7.)

1

During the First Employment Period, Hoenig began as a part-time cashier, was later promoted to the position of service advisor, and eventually held the position of extended warranty administrator. (*Id.* ¶¶ 4, 6.) Hoenig returned to work at Knauz in August 2004 as an extended warranty administrator, and she was continually employed by Knauz from then until her termination in July 2011 (the "Second Employment Period"). (*Id.* ¶¶ 4, 7.)

Hoenig alleges that she performed well and received various forms of positive feedback during her time at Knauz. (*Id.* ¶ 9.) Nevertheless, she alleges that she was subjected to unlawful gender discrimination with respect to her wages and retaliated against for making charges based on that discrimination, eventually resulting in her termination. (*Id.* ¶ 10.) The alleged discrimination began when Hoenig was promoted to the position of warranty administrator in July 2007. (*Id.* ¶ 11.) Hoenig claims that Knauz promised her that she would receive an increased commission on the warranty revenues she collected after six months in the warranty administrator position. (*Id.* ¶ 14.) She did not receive the promised raise after asking about it on more than one occasion. (*Id.* ¶¶ 16-17.) Hoenig later learned that Knauz had paid her male predecessor a higher commission for performing the same warranty revenue collection work. (*Id.* ¶ 18.) Hoenig then asked for the raise again, without revealing her knowledge of the pay discrepancy, and was again denied. (*Id.* ¶ 19.) She informed two Knauz managers that she was aware of the pay discrepancy and believed it was unfair. (*Id.* ¶¶ 20-21.) Upon this disclosure, the managers allegedly ignored her concerns and made statements indicating that she was lucky to have a job and that plenty of people would apply for her position if it were open, which Hoenig understood to be a threat of termination if she continued to ask for a raise. (*Id.* ¶ 21.) Hoenig alleges that Knauz attempted to correct the alleged disparity by reducing a male colleague's commission percentage rather than increasing the commission she received, but that

Knauz simultaneously increased the male colleague's hourly wage so that he was still earning more than Hoenig. (*Id.* ¶¶ 22-23.)

In August 2010, because of this pay disparity, Hoenig filed her first charge of discrimination against Knauz with the Equal Employment Opportunity Commission ("EEOC"), which issued a determination of probable cause. (*Id.* ¶ 25.) Hoenig alleges that upon receiving notice of the charge, Knauz retaliated against her in the form of pretextual write-ups, which were back-dated to August. (*Id.* ¶¶ 27-28.) Hoenig alleges that the purpose of the write-ups was either to drive her out of the company or to fabricate a pattern of behavior that would justify firing her. (*Id.* ¶¶ 29-30.) She alleges that Knauz issued additional "sham write-ups" through the summer of 2012, and that the pretextual and frivolous write-ups closely followed settlement discussions in which Knauz expressed a desire for Hoenig to resign. (*Id.* ¶¶ 29-31.) Hoenig also alleges that she experienced retaliation in non-disciplinary ways, including reductions of pay, restrictions on her ability to take vacation days, members of the management instructing one of the owners of the dealership not to speak to her due to her pending claims, and workplace hostility, including one coworker's miming of physical violence directed at her. (*Id.* ¶ 32.) Hoenig reported this alleged discrimination and retaliation to Knauz, but no action was taken, so she filed another charge with the EEOC in May 2011 alleging retaliation. (*Id.* ¶¶ 35-36.) The EEOC issued a second determination of probable cause. (*Id.* ¶ 36.)

Hoenig alleges that Knauz's discriminatory and retaliatory behavior harmed her health such that she was diagnosed with depression, panic attacks, and anxiety. (*Id.* ¶ 37.) Based on the recommendation of her physician, Hoenig requested and received leave under the FMLA in May 2011. (*Id.* ¶¶ 38-39.) Hoenig claims that Knauz subjected her to unlawful retaliation and

discrimination on the basis of her medical leave by, among other things, citing "frequent absences" as a reason for her eventual termination. (*Id.* ¶¶ 39-40.)

Finally, Hoenig alleges that Knauz drafted a Litigation Hold Memorandum ("Memo") that purported to require her to save documents and emails that were relevant to her discrimination and retaliation claims. (*Id.* ¶ 33.) Hoenig refused to sign the Memo until she could discuss it with her attorney. (*Id.* ¶ 34.) She alleges that Knauz accused her of insubordination in response to her waiting to sign and threatened her with termination if she did not comply with the directives in the Memo. (*Id.*) Upon later receiving an email that the Memo needed to be signed that day, Hoenig called her lawyer during working hours to discuss the Memo. (*Id.*) Knauz subsequently issued her a write-up for being away from her desk and speaking on her cell phone during working hours. (*Id.*)

Knauz terminated Hoenig on July 22, 2011, for the stated reason of insubordination. (*Id.* ¶ 41.) Hoenig alleges that the purported insubordination consisted of her gathering information to prove that a write-up contained false accusations and talking to her attorney about the Memo. (*Id.*) Hoenig also alleges that she was terminated three days after she notified Knauz that she would be filing another charge of retaliation with the EEOC. (*Id.* ¶ 42.) Hoenig alleges that upon the EEOC's finding of reasonable cause that Knauz discriminated and retaliated against her, and the subsequent failure of the EEOC's conciliatory efforts, it issued Hoenig a Notice of Right to Sue in November 2012. (*Id.* ¶¶ 47-48.) As a result of Knauz's actions, Hoenig alleges that she has suffered extreme emotional distress; lost wages, compensation, and benefits; damage to her career and reputation; embarrassment and humiliation; other non-pecuniary losses; and that she has incurred attorneys' fees. (*Id.* ¶¶ 49-52.)

## PROCEDURAL HISTORY

On February 4, 2013, Hoenig filed an eight-count complaint with this Court, alleging violations of Title VII, the Equal Pay Act, the Illinois Equal Pay Act, and the FMLA, as well as unlawful retaliation in violation of each statute. (*Id.* ¶¶ 54-88.) On April 5, 2013, Knauz filed its answer and affirmative defenses, (R. 9, Def.'s Answer,) which did not raise the issue of arbitration or contest Hoenig's allegations regarding venue. (*See id.* ¶ 3). In a joint status report filed on April 8, 2013, the parties agreed upon a June 3, 2013 deadline to amend the pleadings. (R. 11, Jt. Status Report at 3.) On April 11, 2013, the Court ordered the parties to commence discovery, and it set a discovery deadline of September 30, 2013. (R. 12, Min. Entry.)

On May 9, 2013, Knauz moved to amend its answer and affirmative defenses pursuant to Federal Rule of Civil Procedure 15 in order to deny Hoenig's allegation that venue is proper in this Court and to assert as an affirmative defense that Hoenig's complaint be dismissed based on improper venue. (R. 16, Def.'s Mot. Leave Am. ¶¶ 4-5.) In conjunction with its motion for leave to amend, Knauz also filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to stay these proceedings pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. (R. 18, Def.'s Mot. Dismiss.) The impetus for the filing of these motions was that while preparing its initial discovery disclosures, defense counsel allegedly came across an employment agreement Hoenig signed in August 2003 in her personnel file. (R. 16, Def.'s Mot. Leave Am. ¶ 3.) The employment agreement contains an agreement to arbitrate (the "Agreement"). (R. 20, Ex. 1, Agreement.) In relevant part, this Agreement states:

> It is further agreed that Employee and the Dealership will utilize binding arbitration to resolve all disputes that may arise out of the employment context. Both the Dealership and Employee agree that any claim, dispute, and/or controversy that either employee may have against the Dealership . . . or the

Dealership may have against the Employee, arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, or other association with the Dealership, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Uniform Arbitration Act, 710 ILCS 5/1 et seq. Included within the scope of this Agreement are all disputes . . . including, but not limited to, any claims of discrimination and harassment . . . To the extent applicable in civil actions in U.S. District Court, the following shall apply and be observed: all rules of pleading, all rules of evidence, all rights to discovery, and all rights to resolution of the dispute by means of motions for summary judgment and judgment on the pleadings . . . EMPLOYEE UNDERSTANDS AND AGREES TO THIS BINDING ARBITRATION PROVISION, AND BOTH EMPLOYEE AND THE DEALERSHIP GIVE UP THEIR RIGHT TO TRIAL BY JURY OF ANY CLAIM EMPLOYEE OR THE COMPANY MAY HAVE AGAINST EACH OTHER.

(R. 20, Ex. 1, Agreement.)[1]

On June 10, 2013, Hoenig responded to both of Knauz's motions, (R. 28, Pl.'s Resp. Mot. Leave; R. 27, Pl.'s Resp. Mot. Dismiss), and on June 24, 2013, Knauz replied in support of both motions, (R. 30, Def.'s Reply Mot. Leave; R. 29, Def.'s Reply Mot. Dismiss.) Knauz included new facts about its hiring processes in the form of sworn declarations by Knauz employees attached to its reply in support of its motion to dismiss. (R. 29, Def.'s Reply Mot. Dismiss at 3-4; R. 29, Ex. F, Podgorski Decl.; R. 29, Ex. G, Morocco Decl.; R. 29, Ex. H, Madden Decl.)

On July 1, 2013, in order to respond to the new facts Knauz included in its reply, Hoenig moved for leave to file a sur-reply. (R. 31, Pl.'s Mot. Leave.) On July 8, 2013, Knauz moved to strike Hoenig's motion for leave to file a sur-reply. (R. 35, Def.'s Am. Mot. Strike.) On July 10, 2013, the Court granted Hoenig's motion for leave to file a sur-reply and denied Knauz's amended motion to strike. (R. 37, Min. Entry.)

---

[1] The copy of the Agreement included in the filings is of low quality and several of the lines are difficult to make out, but the language provided here appears to have been accepted by both parties, (see R. 20, Def.'s Mem. at 2-3; R. 27, Pl.'s Resp. Mot. Dismiss at 8 n.4), and will be used by the Court in making its rulings.

Presently before the Court are Knauz's motion for leave to file an amended answer and affirmative defenses, filed *instanter*, (R. 16, Def.'s Mot. Leave Am.), and its motion to dismiss or stay these proceedings pending arbitration, (R. 18, Def.'s Mot. Dismiss). As the Court's ruling on the motion to dismiss or stay is dependent on its ruling on the motion for leave to amend, the Court addresses Knauz's motion for leave to amend first.

## KNAUZ'S MOTION FOR LEAVE TO AMEND

### I.    Legal Standard

"Rule 15(a) declares that leave to amend shall be freely given when justice so requires," and a party "ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted). Nevertheless, a Rule 15(a) motion "may be denied where there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (citing *Foman*, 371 U.S. at 183). "The assessment whether there is undue delay or undue prejudice, as well as the ultimate decision to grant or deny leave to amend, is within the district court's discretion." *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 351 (7th Cir. 1992).

### II.    Analysis

Hoenig challenges Knauz's motion for leave to amend its answer on three grounds: (1) that Knauz has unduly delayed raising the issues in the motion; (2) that granting the motion would be unfairly prejudicial to Hoenig; and (3) that allowing the amendments, which allege that the Agreement requires the parties to arbitrate their dispute, would be futile because no arbitration agreement applies to this dispute, and, even if one does, Knauz waived its right to

arbitration by acting inconsistently with an intent to arbitrate. (R. 28, Pl.'s Resp. Mot. Leave at 5-10.) The Court addresses each argument in turn.

## A.  Whether Knauz has unduly delayed seeking arbitration

Hoenig argues that Knauz's failure to raise the issue of arbitration until after it had filed its initial answer indicates that Knauz and its counsel either forgot about the existence of the Agreement or chose not to raise the issue for some other, possibly disingenuous, reason. (R. 28, Pl.'s Resp. Mot. Leave at 5-7.) The Agreement had been provided to the EEOC, along with the rest of Hoenig's personnel file, as part of the parties' proceedings before that body, but neither the Agreement nor the possibility of arbitration had been referenced during the first three months of litigation before this Court. (*Id.* at 5-6.) Hoenig contends that before Knauz allegedly unearthed the Agreement, it filed an answer and affirmative defenses, issued a Rule 68 offer of judgment, co-produced and filed a joint status report, appeared before the Court for a status hearing, and participated in initial discovery, including being served with Hoenig's Rule 26(a)(i) initial disclosures. (*Id.* at 3-4.) Hoenig argues that allowing this amount of litigation to occur before raising the issue of arbitration or the Agreement demonstrates Knauz's undue delay, and she urges the Court to deny Knauz's leave to amend based on such delay. (*Id.* at 5.)

Knauz claims that it did not challenge this Court's venue in its original answer and affirmative defenses because "inadvertent human error" had caused defense counsel to "simply forg[et] about the Agreement's existence" until defense counsel came across it on May 3, 2013, while gathering documents necessary to complete its initial discovery disclosures. (R. 20, Def.'s Mem. at 4-6.) Upon unearthing the Agreement on May 3, 2013, Knauz promptly informed plaintiff's counsel via letter that it would seek arbitration based on the Agreement's provisions. (*See* R. 20, Ex. 5, May 3, 2013 Letter.)

While Knauz's admitted forgetfulness and Hoenig's accusations of dishonesty are troubling, neither is relevant to a determination of undue delay necessitating a denial of Knauz's motion. Motions for leave to amend are generally denied on the basis of undue delay when they are filed long after the filing of the original pleading and after extensive litigation. *See, e.g.*, *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (affirming the district court's denial of a motion for leave to amend because it was filed 14 months after the filing of the complaint and two weeks before the trial date, which had already been postponed once due to the movant's delay); *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005) (affirming the district court's denial of a motion for leave to amend because it was filed "approximately three years after the start of the litigation and approximately eight months after the plaintiffs completed discovery"); *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (affirming the district court's denial of a motion for leave to amend because it was filed at the final pre-trial conference, 16 months after the filing of the complaint).

Knauz moved for leave to amend its answer and affirmative defenses only three months after Hoenig filed the complaint, one month after Knauz filed its original answer and affirmative defenses, and nearly a month *before* the mutually agreed upon June 3, 2013 deadline for motions to amend pleadings. (*See* R. 11, Jt. Status Report at 3.) No dispositive motions have been filed, and discovery has just begun. Based on these facts, the Court cannot find that Knauz demonstrated undue delay in moving for leave to amend its answer and affirmative defenses.

### B. Whether Knauz's proposed amendments would be unfairly prejudicial to Hoenig

Hoenig also asserts that granting Knauz's motion for leave to amend would be unfairly prejudicial to her because the parties have already engaged in three months of litigation and discovery. (R. 28, Pl.'s Resp. Mot. Leave at 7.) Hoenig emphasizes the amount of time and

effort she has spent gathering documents and preparing discovery, and she claims that forcing her to "start over again in a completely new forum" would render this time and effort wasted and create the risk of losing evidence and available witnesses. (*Id.* at 7-8.)

In deciding whether to permit an amendment, a court is required to consider any potential prejudice to the non-movant. *Zenith Radio Corp. v Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971). Amendments may be prejudicial when they force parties to re-litigate issues that have already been settled or to incur additional discovery costs, *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995), or if they would render a party's litigation preparation wasted, *Knapp v. Whitaker*, 757 F.2d 827, 849 (7th Cir. 1985).

Here, Hoenig has not engaged in "wasted litigation" such that she would be unfairly prejudiced by Knauz's amendments. While the Court recognizes that Hoenig has expended time and energy preparing her case for this Court and producing initial discovery, her efforts have not been wasted because the Agreement stipulates that this Court's discovery rules will also apply in any arbitration proceedings. (R. 20, Ex. 1, Agreement) ("To the extent applicable in civil actions in U.S. District Court, the following shall apply and be observed: . . . all rights to discovery . . ."). Thus, Knauz is entitled to the discovery Hoenig has already produced regardless of whether this dispute proceeds in litigation or in arbitration. Hoenig's time and effort have not been spent in vain, and she will not be prejudiced by Knauz's amendments.

### C.    Whether Knauz's proposed amendments would be futile

Hoenig's most robust argument is that Knauz's motion for leave to amend should be denied because the amendments would be futile. (R. 28, Pl.'s Resp. Mot. Leave at 8-11.) Hoenig argues that the amendments would be futile because the Agreement does not apply to this dispute, and, even if it does apply, Knauz has waived its right to arbitrate under the

Agreement. (*Id.*) These arguments perfectly mirror Hoenig's arguments in response to Knauz's motion to dismiss or stay this action. *Compare* (*id.*), *with* (R. 27, Pl.'s Resp. Mot. Dismiss at 6-14). The Court addresses these arguments below in the context of that motion and finds them unsupported. Thus, for the reasons discussed more fully below, the Court finds that Knauz's proposed amendments are not futile, and the Court grants Knauz's motion for leave to amend its answer (R. 16).

## KNAUZ'S MOTION TO DISMISS OR TO STAY PENDING ARBITRATION

Knauz moves to dismiss Hoenig's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to stay these proceedings pending arbitration pursuant to the FAA. (R. 18, Def.'s Mot. Dismiss.) The Seventh Circuit has repeatedly held that when arbitration is appropriate in the trial court's district, the proper course of action is to stay the proceedings rather than to dismiss them outright. *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). The cases Knauz cites to support its request for a dismissal are readily distinguishable because they involve contracts specifying arbitration or litigation in other districts. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district"); *Marzano v. Proficio Mortg. Ventures, LLC*, No. 12 C 7696, --- F. Supp. 2d ---, 2013 WL 1789779, at *15 (N.D. Ill. Apr. 25, 2013) (Castillo, J.) (dismissing pursuant to Rule 12(b)(3) where valid arbitration agreements required arbitration in Ohio and Utah); *Burns v. Wilderness Ventures, Inc.*, No. 12 C 4188, 2012 WL 3779069, at *6 (N.D. Ill. Aug. 30, 2012) (dismissing pursuant to Rule 12(b)(3) where a valid forum-selection clause required litigation in Wyoming). The Agreement at issue here does not identify a specific

arbitral forum, so arbitration is appropriate in this Court's district. *See* 9 U.S.C. § 3. Therefore, a stay, rather than dismissal, is the appropriate course of action if this dispute is subject to arbitration. *Tice*, 288 F.3d at 318. The Court thus focuses its inquiry on Knauz's request to stay these proceedings pending arbitration.

## I.     Legal Standard

The FAA embodies a federal policy favoring enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The relevant language of the FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quoting 9 U.S.C. § 2) (internal quotation marks omitted). A court must determine whether the parties are bound by a given arbitration agreement and whether the agreement to arbitrate applies to a particular type of controversy. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). In determining whether parties have agreed to arbitrate, courts apply state contract law. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005). If a valid agreement to arbitrate exists, the burden is on the party opposing arbitration to show that the claims at issue are not covered the agreement. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). Upon being satisfied that the claims at issue are referable to arbitration under a valid agreement, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Any doubts concerning the scope of arbitrable issues must be

resolved in favor of arbitration, *Moses H. Cone*, 460 U.S. at 24-25; *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012), and a request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960).

## II.    Analysis

The existence and validity of the Agreement are not in dispute, nor is the application of the Agreement to the *type* of dispute at issue here. Thus the only determinations the Court must make are: (1) whether the Agreement applies to Hoenig's claims of discrimination and retaliation that arose during the Second Employment Period, and (2) whether the Court should nevertheless refuse to enforce the Agreement on the grounds that Knauz has waived its right to seek arbitration of Hoenig's underlying claims. *See Howsam*, 537 U.S. at 84.

### A.    Whether the Agreement applies to Hoenig's Second Employment Period

Hoenig argues that the plain language of the Agreement demonstrates that it does not apply to disputes that arose during her Second Employment Period. (R. 27, Pl.'s Resp. Mot. Dismiss at 6-9.) Under Illinois law, the Court "must interpret the words of the contract with their common and generally accepted meanings" and "construe the words of a contract within the context of the contract as a whole." *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct. 1st Dist. 2005) (internal citations omitted). The plain meaning of the language used in the Agreement is very broad, but clear. It provides, in relevant part, that the parties give up their right to a jury trial, and it states that it covers "any claim, dispute, and/or controversy . . . arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, or other association with the

Dealership." (R. 20, Ex. 1, Agreement) (emphasis supplied). The Seventh Circuit has repeatedly held that the language "arising out of" is "extremely broad" and creates a "presumption of arbitrability" that "reaches all disputes having their origin or genesis in the contract." *Gore*, 666 F.3d at 1034 (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999)). Thus, the plain language of the Agreement appears to cover Hoenig's claims, which clearly arise from her employment by Knauz. Hoenig bears the heavy burden of rebutting the presumptive arbitrability of her claims. *See also Shearson/Am. Exp.*, 482 U.S. at 226-27.

Attempting to meet this burden, Hoenig first argues that the Agreement expired upon her resignation in March 2004. (R. 27, Pl.'s Resp. Mot. Dismiss at 6.) Specifically, she points to the language stating that the employment agreement, of which the Agreement is a part, "is the entire agreement . . . regarding dispute resolution, the length of my employment, and the reasons for termination of employment." (*Id.* at 8) (quoting R. 20, Ex. 1, Agreement). Hoenig contends that this language evinces the parties' intent that the agreement would cease to be in effect once she was no longer employed. (*Id.*) The Court does not find an expiration date in the quoted language, and the case law Hoenig relies upon in support of this reading is distinguishable from the instant dispute. The arbitration agreements in the cases she cites contained *explicit* expiration dates, evidencing the intent of the parties to set a clear end date after which they would no longer be bound to arbitrate. *See Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 997 (7th Cir. 2007) (finding that parties were not bound by an arbitration provision in a contract containing *an express expiration date* when the dispute occurred after that date and there was no written modification to the contract); *Gonzalez v. Hurley Int'l, Inc.*, 763 F. Supp. 2d 288, 293 (D.P.R. 2011) (same); *O'Hare Accommodations, Inc. v. Aaron Corp.*, No. 09 C 6644, 2010 WL

2106650, at *4 (N.D. Ill. May 25, 2010) (same); *Cornell v. Harmony Homes, Inc.*, No. 06–cv–00323, 2007 WL 38132, at *3-*4 (D. Colo. Jan. 4, 2007) (same). The Agreement at issue here, however, contains no expiration date. (*See* R. 20, Ex. 1, Agreement.) Instead, it states that it "may not be changed, altered, revised or modified without a writing signed by the President of the Dealership." (*Id.*) Thus, the plain language of the Agreement does not support Hoenig's contention that the Agreement expired after the First Employment Period.

Hoenig next argues that the five-month gap between her resignation in March 2004 and her rehiring in August 2004 marked two distinct periods of employment such that the Agreement was invalidated by her resignation. (R. 27, Pl.'s Resp. Mot. Dismiss at 9.) She relies upon a factually similar but readily distinguishable case, *Frank v. 84 Components Co.*, No. NA02–14–CH/H, 2002 WL 1364168 (S.D. Ind. June 18, 2002), to argue that the Agreement does not apply to her second period of employment with Knauz. (R. 27, Pl.'s Resp. Mot. Dismiss at 7-8.) In that case, the plaintiff employee, like Hoenig, was rehired by the defendant employer after a period of absence and later sued the employer under Title VII. *Frank*, 2002 WL 1364168, at *1. The employer sought to stay litigation in order to enforce an arbitration agreement signed during the employee's first period of employment. *Id.* at *2. The factual similarities end there. In *Frank*, the employee received a handbook, filled out various forms, and signed an arbitration agreement upon her initial hiring. *Id.* at *1. Upon her rehiring, she underwent the exact same process and signed the exact same paperwork except that she did *not* sign an arbitration agreement. *Id.* The district court found that the original contract had been terminated and a second one entered into, and it held that the parties' relationship during the second period of employment was governed by the terms and conditions of the handbook and paperwork the employee received upon her rehiring. *Id.* at *3. Since the plaintiff did not sign an arbitration

agreement upon being rehired, no arbitration agreement applied to the dispute that arose during the second employment period. *Id.* at *3-*4.

Here, at the beginning of the Second Employment Period, Hoenig did not complete a new application, fill out a new W-4 form, acknowledge receipt of an employee handbook, undergo a pre-employment drug test, or complete any of the other paperwork or procedures Knauz requires of new employees because Knauz did not consider her a new employee. (R. 29, Def.'s Reply Mot. Dismiss at 7; R. 29, Ex. F, Podgurski Decl. ¶¶ 8-9; R. 29, Ex. G, Morocco Decl. ¶¶ 9-11; R. 29, Ex. H, Madden Decl. ¶¶ 10-12.) In fact, unlike the plaintiff in *Frank*, Hoenig "returned to work under the same terms and conditions that were in place when she resigned and with all the same rights, benefits, and obligations" as before. (R. 29, Ex. F, Podgurski Decl. ¶ 7; *see also* R. 29, Ex. G, Morocco Decl. ¶ 9; R. 29, Ex. H, Madden Decl. ¶ 10.) Thus a more analogous case is *Cummins v. Town & Country Ford, Inc.*, No. 3:10–cv–134, 2011 WL 1403179 (S.D. Ind. April 13, 2011). There, the plaintiff signed an employment contract, including an arbitration agreement, upon being hired at defendant car dealership. *Id.* at *1. He voluntarily resigned and then was rehired six months after his resignation. *Id.* Upon being rehired, he signed no paperwork and executed no arbitration agreement. *Id.* He was later terminated and proceeded to file a suit alleging Title VII claims. *Id.* at *2. When the defendant invoked the arbitration agreement, the plaintiff contended that it only applied to his first period of employment. *Id.* The district court granted the defendant's motion to stay litigation and to compel arbitration. *Id.* at *3. It found that the arbitration agreement, which expressly stated that it was the entire agreement between the parties, had not been "revoked by 'mutual consent evidenced by a writing signed by both parties' as called for in the Agreement," and thus it covered the second period of employment. *Id.*

Here, the Agreement contains no expiration date and instead instructs that it "may not be changed, altered, revised or modified without a writing signed by the President of the Dealership." (R. 20, Ex. 1, Agreement.) The President of the Dealership, William Madden, attests that he did not "execute[ ] any written document terminating, revoking, rescinding, or otherwise modifying the Agreement signed by Ms. Hoenig in 2003," (R. 29, Ex. H, Madden Decl. ¶ 13), and Hoenig does not provide any evidence to the contrary. Without an express expiration date or a written modification by the President, Hoenig has not carried her burden to demonstrate that the Agreement does not cover the claims at issue, which clearly arise out of her employment with Knauz. *See Shearson/Am. Exp.*, 482 U.S. at 226-27. Hoenig argues that Ms. Podgurski's declaration is untrue, but the declarations of Madden and Morocco are sufficient to conclude that the Agreement governed the parties' relationship during the Second Employment Period.

Given the broad language of the Agreement and the lack of evidence of any subsequent modification or revocation, the Court cannot say with positive assurance that the Agreement is not susceptible of an interpretation that covers Hoenig's discrimination and retaliation claims arising out of the Second Employment Period. *See United Steelworkers*, 363 U.S. at 582-83. Therefore, keeping in mind the well-settled rule requiring resolution of doubts regarding the scope of arbitrability in favor of arbitration, *see Moses H. Cone*, 460 U.S. at 24-25, the Court determines that Hoenig's claims are arbitrable under the Agreement.

**B.      Whether Knauz has waived its right to arbitration**

Having determined that the Agreement applies to the instant dispute, the Court must next determine whether Knauz has waived its right to arbitrate. Hoenig states that despite Knauz's knowledge of the Agreement's existence, it filed an answer and affirmative defenses, issued a

Rule 68 offer of judgment, co-produced and filed a joint status report, appeared before the Court for a status hearing, and participated in initial discovery before seeking arbitration. (R. 27, Pl.'s Resp. Mot. Dismiss at 10-11.) Hoenig asserts that this amount of litigation activity constitutes a lack of diligence and is inconsistent with an intent to arbitrate, and thus that Knauz's behavior supports a finding of waiver. (*Id.* at 11-12.) Knauz counters, in essence, that Hoenig's argument fails because this litigation is still in its incipient stages. (R.29, Def.'s Reply at 12.)

"Waiver can either be express or inferred." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods Co.*, 969 F.2d 585, 587 (7th Cir. 1992). Here, Knauz has not expressly waived its right to arbitrate, so the Court must determine whether it has implicitly done so. The Seventh Circuit has instructed that "[n]o rigid rule exists as to what constitutes a waiver of the right to arbitrate. Instead, the issue depends on the circumstances of each particular case." *Id.* at 587-88. The diligence, or lack thereof, of the party seeking arbitration is an important consideration in deciding whether there has been a waiver. *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). Other important factors include whether the party seeking arbitration substantially delayed its request for arbitration or acted inconsistently with its intent to arbitrate. *St. Mary's*, 969 F.2d at 589. Additionally, although prejudice to the party resisting arbitration is not required to find waiver, "it is a relevant factor in the totality-of-the-circumstances analysis." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011) (citing *St. Mary's*, 969 F.2d at 590). "Because of the strong federal policy favoring enforcement of arbitration agreements, "parties asserting waiver bear a heavy burden and courts should not lightly infer waiver." *St. Mary's*, 969 F.2d at 590.

Hoenig urges the Court to find that Knauz's delay in invoking the Agreement was inexcusable. (R. 27, Pl.'s Resp. Mot. Dismiss at 13.) Indeed, "[s]election of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution." *Cabinetree*, 50 F.3d at 391. In cases where courts have found waiver based on or based in part on delay, however, the delay between the initiation of the suit and the party's pursuit of arbitration has been much greater than the three-month delay here and buttressed by more substantial participation in litigation proceedings. *See, e.g., Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 754 (7th Cir. 2002) (finding waiver where defendant fully participated in bankruptcy adversary proceedings and only sought arbitration after the confirmation of plaintiff's Chapter 11 plan of reorganization); *Cabinetree*, 50 F.3d at 389 (finding waiver where ten months of litigation, including removal to federal court, extensive discovery, and the setting of a trial date, had passed before defendant sought arbitration); *St. Mary's*, 969 F.2d at 587 (finding waiver where ten months of litigation, including defendant's filing of a motion to dismiss or for summary judgment, had passed before defendant raised the issue of arbitration); *Corbett v. DRH Cambridge Homes, Inc.*, No. 04 C 3344, 2005 WL 1838456, at *1 (N.D. Ill. July 26, 2005) (finding waiver where defendant failed to raise the issue of arbitration as an affirmative defense and sought arbitration eleven months after the complaint was filed and eight months after it filed its answer).

Here, in contrast, Knauz sought to amend its answer and affirmative defenses in order to invoke its right to arbitrate only one month after it filed its initial answer and three months after Hoenig filed the complaint. (*See* R. 16, Def.'s Mot. Leave Am.; R. 20, Ex. 5, May 3, 2013 Letter.) Knauz raised the issue of arbitration in the incipient stages of the discovery process,

before any substantive motions had been filed or any substantive rulings were made, and Knauz received no discovery that it would not be entitled to in arbitration proceedings under the Agreement. *See infra* at 10. This relatively minimal delay does not support a finding that Knauz has acted inconsistently with an intention to arbitrate. The Court agrees with Hoenig that Knauz should have known about the existence of the Agreement, given that each of its employees sign a similar agreement, and Knauz did not demonstrate the diligence in answering the complaint that this Court expects from parties appearing before it. Nevertheless, the totality of the circumstances does not indicate that Knauz has waived its right to arbitrate. *See Kawasaki Heavy Indus.*, 660 F.3d at 994. Thus the Court must stay these proceedings pending arbitration. 9 U.S.C. § 3. Accordingly, the Court grants Knauz's motion to stay this action (R. 18).

Therefore, as indicated above, Knauz's proposed amendments to its answer and affirmative defenses (R. 16) are not futile because the Agreement does apply to Hoenig's underlying claims of discrimination and retaliation, and Knauz has not waived its right to arbitrate.

## CONCLUSION

For the foregoing reasons, Knauz's motion for leave to amend its answer and affirmative defenses (R. 16) is GRANTED. The Court finds that the parties are subject to binding arbitration pursuant to the terms of the Agreement, and Knauz's motion to stay litigation proceedings pending arbitration (R. 18) is GRANTED.

ENTERED: _____

Chief Judge Ruben Castillo
United States District Court

Dated: October 16, 2013